WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erica L. Smith,<br><br>        Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>        Defendant. | No. CV-14-00520-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Erica L. Smith's appeal from the Social Security Commissioner's denial of her application for disability insurance benefits and supplemental security income under the Social Security Act. Plaintiff argues that the administrative law judge ("ALJ") erred by finding Plaintiff and her husband's testimony to be non-credible and by improperly weighing the opinions of treating physicians Ramin Sabahi, M.D., and Nirmala Aryal, M.D. The Court now rules on Plaintiff's appeal.

**I.  Background**

    **A.  Procedural Background**

On November 9, 2010, Plaintiff filed an application for disability and disability insurance benefits, alleging a disability onset date of March 29, 2009. (Tr. 24).[1] On April 1, 2011, Plaintiff filed an application for supplemental security income, alleging the same onset date. (*Id.*) Plaintiff's claims were denied initially on February 28, 2011, and upon

---

[1] Citations to "Tr." are to the certified administrative transcript of record. (Doc. 19).

1 reconsideration on July 7, 2011. (*Id.*) Plaintiff timely requested a hearing which was conducted before ALJ Philip E. Moulaison on February 28, 2012 in Phoenix, Arizona. (*Id.*) On March 27, 2012, the ALJ issued an unfavorable decision. (Tr. 35). After Plaintiff's request for review by the Social Security Administration Appeals Council was denied, she commenced this action in federal court on March 3, 2014. (Doc. 1).

### B. Plaintiff's Background

Plaintiff was born in 1981 and lives with her husband and their three children in Avondale, Arizona. (Tr. 45). Plaintiff earned her GED certification before working for several years as a photographer/manager, cashier, housekeeper, meat cutter, customer service representative, cook, fast food worker, telemarketer, snack bar attendant, and waitress. (Tr. 47, 205). Plaintiff's final day of employment was on October 9, 2008, when she was terminated from her position as a photographer/manager for violating company policy. (Tr. 46, 181). According to Plaintiff, she became disabled on March 22, 2009,[2] after she "ha[d not] been able to find employment since" she was terminated in October 2008. (Tr. 181).

Plaintiff's daily activities consist of waking up and assisting her children prepare for school. (Tr. 193). After Plaintiff drives her children to school, she goes back home to "sit on the couch." (*Id.*) After several hours, Plaintiff will stand up and get food from the kitchen. (*Id.*) Plaintiff will then sit on the couch until she drives to pick up her children from school. (*Id.*) Upon her return, Plaintiff will then "flip flop" on the couch until she goes to bed "around 1am – 3am." (*Id.*) Plaintiff states that she can care for her personal hygiene and dress, in addition to "regularly" exercising four to five days per week. (Tr. 556, 585, 746). Plaintiff smokes tobacco and denies alcohol use. (Tr. 557).

### C. Medical Background

Plaintiff claims that she suffers from an extensive list of impairments, including

---

[2] Plaintiff's alleged onset date coincides with a knee injury she suffered while jumping on a trampoline in March 2009. *See* (Tr. 26–27). The ALJ found this injury to be non-severe, which Plaintiff does not dispute. (*Id.*)

- 2 -

fibromyalgia, migraine and tension headaches, obesity, knee pain, anxiety disorder NOS, and depressive disorder NOS. (Doc. 25 at 2). Plaintiff also claims that she suffers from myalgia myositis, depression with anxiety, fatigue, and possible thyroid disorder. (Tr. 156, 158, 181). Plaintiff takes an equally extensive number of medications, including Tramadol, Trazodone, Effexor XR, Soma, Ibuprofen, Omeprazole, Ranitidine, Meclizine, Frova, Nortriptyline, Clindamycin topical, Retin-A gel topical. (Tr. 556–57). Plaintiff has sought treatment from a variety of sources for a range of ailments, dating back to 2008 when Plaintiff was treated for knee pain and depression. (Doc. 25 at 3). Physicians have prescribed Plaintiff the above-listed medications, in addition to recommending water therapy for physical pain. (*Id.* at 5). One physician determined that Plaintiff has no work-related mental limitations, (*id.* at 6), while another has deemed Plaintiff to be "intelligent [and] articulate," (Tr. 677).

## II. Legal Standard

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is

1  because "[t]he trier of fact and not the reviewing court must resolve conflicts in the
2  evidence, and if the evidence can support either outcome, the court may not substitute its
3  judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992);
4  *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

### A.     Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show that, among other things, she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick*, 157 F.3d at 721. A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the

most he can still do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See* 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06–3p, 71 Fed. Reg. 45593-03.

**C. The ALJ's Evaluation under the Five-Step Process**

At step one of the sequential evaluation process the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date. (Tr. 26). At step two, the ALJ concluded that Plaintiff had the following severe impairments: "fibromyalgia; migraine and tension headache; and obesity." (*Id.*) Under step three, the ALJ determined that Plaintiff's mental impairments did not meet or equal any of the listed impairments in the Social Security regulations. (Tr. 29).

Before moving on to step four, the ALJ conducted a residual functional capacity ("RFC") determination in light of Plaintiff's testimony and the objective medical

evidence. (Tr. 30). The ALJ found that Plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit, stand, and walk for eight hours in an eight-hour day. She can only occasionally reach with her right upper extremity." (*Id.*) At step four, the ALJ found that Plaintiff could perform her past relevant work as a cashier, telephone solicitor, sales clerk, and fast food worker. (Tr. 34). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 34).

**III.    Analysis**

Plaintiff makes three arguments for why the Court should set aside the ALJ's decision. Specifically, Plaintiff asserts that the ALJ committed the following errors: (1) failing to give the opinions of Plaintiff's treating physicians "controlling weight," (2) rejecting Plaintiff's symptom testimony without providing clear and convincing reasons for doing so, and (3) rejecting Plaintiff's husband's testimony without sufficient explanation. (Doc. 25 at 11–14). The Court will address each argument in turn.

**A.    Whether the ALJ Properly Considered and Weighed the Opinions of Plaintiff's Treating Physicians**

The Court first turns to Plaintiff's argument that the ALJ erred when he did not give "controlling weight" to the opinions of Drs. Sabahi and Aryal, Plaintiff's treating physicians. The Court will also consider Plaintiff's argument that the ALJ improperly evaluated her treating physicians' opinions, regardless of the weight attached.

**1.    Legal Standard**

The Ninth Circuit distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). As a general rule, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, but less than a treating physician. *Gallant*, 753 F.2d at 1454.

The opinion of a treating physician is generally entitled to controlling weight when

- 7 -

it is "well supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527 (d)(2); *see also Orn*, 495 F.3d at 631. However, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," it should not be given controlling weight. *Orn*, 495 F.3d at 631.

Substantial evidence that contradicts a treating physician's opinion may consist of either (1) an examining physician's opinion or (2) a non-examining physician's opinion combined with other evidence. *Lester*, 81 F.3d at 830–31. In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." (quoting *Magallanes v. Bowen*, 881

- 8 -

1  F.2d 747, 751 (9th Cir. 1989))). If the ALJ determines that a treating physician's opinion
2  is inconsistent with substantial evidence and is not to be given controlling weight, the
3  opinion remains entitled to deference and should be weighed according to the factors
4  provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631. These factors include (1) the
5  length of the treatment relationship and the frequency of examination; (2) the nature and
6  extent of the treatment relationship; (3) the extent to which the opinion is supported by
7  relevant medical evidence; (4) the opinion's consistency with the record as a whole; and
8  (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R.
9  § 404.1527(c). But the ALJ may still reject a contradicted treating physician's opinion for
10 "specific and legitimate reasons that are supported by substantial evidence in the record."
11 *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830); *Ghanim v. Colvin*, 763
12 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d
13 1194, 1198 (9th Cir. 2008)).

14 Finally, "[a]lthough a treating physician's opinion is generally afforded the
15 greatest weight in disability cases, it is not binding on an ALJ with respect to the
16 existence of an impairment or the ultimate determination of disability." *Tonapetyan v.*
17 *Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). This is because the determination as to
18 whether a claimant is disabled is an issue reserved exclusively to the Commissioner. *See*
19 20 C.F.R. § 404.1527(d)(1). Thus, even if a treating physician's opinion of disability is
20 controlling, it does not necessarily lead to a finding of disability. *See Magallanes*, 881
21 F.2d at 753 (rejecting a treating physician's opinion of disability).

22    **2. Analysis**
23     **a. Dr. Sabahi**
24 Dr. Sabahi is Plaintiff's treating rheumatologist. (Tr. 33). After examining Plaintiff
25 on multiple occasions, Dr. Sabahi opined that Plaintiff could not perform work-related
26 activities on a regular or consistent basis and concluded that Plaintiff's tender point
27 findings were consistent with fibromyalgia. (*Id.*) Dr. Sabahi opined that Plaintiff could
28 only stand for two hours in an eight-hour day and sit for less than four hours. (*Id.*) The

1  ALJ gave Dr. Sabahi's opinion "little weight" because it was "not consistent with the
2  medical evidence of record, including his own treatment notes." (*Id.*) The ALJ found that
3  Dr. Sabahi's opinion was unsupported by the objective medical evidence and appeared to
4  be "based largely on [Plaintiff]'s subjective statements regarding her abilities[.]" (*Id.*)
5  The ALJ also remarked that Dr. Sabahi "provide[d] no findings to explain or support the
6  limitations he impose[d]." (*Id.*)

7  Plaintiff argues that the ALJ erred by assigning Dr. Sabahi's opinions "little
8  weight" while allotting "great weight" to the opinion of Plaintiff's examining physician,
9  Melissa Linner, M.D. (Doc. 25 at 16). Plaintiff asserts that Dr. Sabahi's opinion was
10  entitled to "controlling weight" as the ALJ failed to "cite evidence of a conflict sufficient
11  to warrant an assignment of less than controlling weight." (*Id.*) Plaintiff insists that
12  although Dr. Linner offered a differing opinion with respect to Plaintiff's physical
13  limitations, she relied on the same findings as Dr. Sabahi, and thus, her opinion did not
14  rest on independent clinical findings. (*Id.* at 19).

15  To begin, the ALJ did not give "little weight" to Dr. Sabahi's opinion as the result
16  of Dr. Linnel's differing opinions. Rather, the ALJ determined that the objective medical
17  evidence did not support Dr. Sabahi's opinion and that Dr. Sabahi did not make any
18  clinical findings that would support the severity of his imposed limitations. (Tr. 33). An
19  ALJ need not give "controlling weight" to a physician's opinion if that opinion is "not
20  well-supported" by the medical evidence. *Orn*, 495 F.3d at 631. Thus, the ALJ provided a
21  permissible reason for rejecting Dr. Sabahi's opinion, and, if that reason is reasonably
22  supported by substantial evidence, it must be upheld.

23  In this regard, Plaintiff argues that the ALJ erred in his review of Dr. Sabahi's
24  opinion. (Doc. 25 at 19–24). Specifically, Plaintiff claims that the ALJ erred by
25  considering the lack of other objective evidence beyond the tender point findings as a
26  reason to give "little weight" to Dr. Sabahi's opinion. (*Id.* at 20–22). Plaintiff further
27  contends that the ALJ erred by giving less weight to Dr. Sabahi's opinion because he
28  relied on Plaintiff's reported symptoms "at face value" in the absence of "any indication

that the claimant was malingering or deceptive." (*Id.* at 23) (citations omitted).

The ALJ did not err by considering the lack of objective evidence beyond Plaintiff's tender points. The ALJ found that Plaintiff's fibromyalgia was a "severe impairment." (Tr. 26). However, the ALJ noted that beyond the tender point findings, there was no objective medical evidence that supported the severity of Dr. Sabahi's imposed limitations. (Tr. 33). This was not error. In the Ninth Circuit, "medical evidence is . . . a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). To the extent Plaintiff argues that the ALJ erred by considering the lack of objective medical evidence because fibromyalgia does not lend itself to objective evidence, the Court disagrees. The ALJ did not reject the *existence* of Plaintiff's fibromyalgia or discredit Dr. Sabahi's opinion that Plaintiff suffered from fibromyalgia; rather, the ALJ reviewed the lack of objective evidence to explore the *severity* of Plaintiff's limitations as opined by Dr. Sabahi. In doing so, the ALJ acted pursuant to Ninth Circuit precedent, and Plaintiff identified no evidence to rebut the ALJ's finding.

As to the ALJ's notation that "[t]he limitations Dr. Sabahi identifies appear to be based largely on the claimant's subjective statements regarding her abilities and limitations[,]" (Tr. 33), the Court does not find error. An ALJ may reject a medical opinion that is based on a claimant's subjective reports in lieu of objective medical data. *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As set forth above, the ALJ properly found that the objective medical evidence did not support Dr. Sabahi's stringent limitations. Plaintiff does not point to any objective evidence establishing that Dr. Sabahi did not unduly rely on Plaintiff's subjective complaints. Thus, the Court will not "second guess" the ALJs' decision in this regard.[3]

---

[3] Even if the ALJ erred by stating that it "appeared" Dr. Sabahi relied too heavily on Plaintiff's subjective statements, the error would be harmless. The ALJ provided several other reasons to give "little weight" to Dr. Sabahi's opinion, such as the lack of findings to support his limitations and his inconsistent treatment notes. *See* (Tr. 33). As a

- 11 -

For these reasons, the Court concludes that the ALJ did not err when reviewing and weighing Dr. Sabahi's opinions.

### b.     Dr. Aryal

Dr. Aryal is Plaintiff's treating neurologist. (Tr. 34). On February 17, 2012, Dr. Aryal opined that Plaintiff was unable to perform work activities on a regular and continuing basis. (*Id.*) Dr. Aryal opined that Plaintiff could stand for only two hours in an eight-hour day and sit for less than three hours. (*Id.*) The ALJ gave Dr. Aryal's opinions "little weight" for three reasons. (*Id.*) First, the ALJ noted that Dr. Aryal's opinions were inconsistent with the medical evidence of record for the same reasons as Dr. Sabahi. (*Id.*) Second, the ALJ found that the only abnormality Dr. Aryal ever noted in her treatment notes was a mild reduction in temperature sensation on a portion of Plaintiff's face. (*Id.*) Thus, according to the ALJ, the stringent limitations levied by Dr. Aryal were unsupported by her clinical findings. (*Id.*) Finally, the ALJ noted that Dr. Arayal appeared to base her opinion on Plaintiff's subjective statements rather than her own findings. (*Id.*)

For the reasons expressed for Dr. Sabahi, the Court does not find that the ALJ committed reversible error by affording Dr. Aryal's opinion "little weight." The ALJ properly noted that the objective medical evidence did not support the severity of Dr. Aryal's limitations and appropriately concluded that Dr. Aryal did not make any findings that supported such stringent work-related limitations. Plaintiff fails to identify any document in the record establishing that Dr. Aryal made a finding that would support her imposed limitations or that Dr. Aryal did not unduly rely on Plaintiff's subjective complaints. Accordingly, the ALJ did not err by giving Dr. Aryal's opinion "little weight."

---

result, the error would be harmless because the ALJ set forth other valid reasons for assigning "little weight" to Dr. Sabani's opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (stating that reversal of an ALJ's decision is prohibited based on an error that is "harmless," i.e., "inconsequential to the ultimate nondisability determination" (quotations omitted)).

- 12 -

### 3. Conclusion

For the foregoing reasons, the Court concludes that the ALJ did not err in considering and weighing the opinions of Drs. Sabahi and Aryal.

## B. Whether the ALJ Properly Discredited Plaintiff's Testimony

The Court next addresses Plaintiff's argument that the ALJ erred by finding Plaintiff's symptom testimony to be non-credible. (Doc. 25 at 26–31).

### 1. Legal Standard

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Molina*, 674 F.3d at 1112. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain her credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283–84); *Lingenfelter*, 504 F.3d at 1036.[4]

---

[4] To the extent the Government argues that the clear and convincing standard does not apply because Congress intended for courts to review an ALJ's decision in a highly deferential manner, *see* (Doc. 26 at 4–5), the Court disagrees. In *Burrell v. Colvin*, the Ninth Circuit expressly rejected the same argument the Government now presents. 775 F.3d 1133, 1136–37 (9th Cir. 2014). Moreover, to the extent the Government argues that the clear and convincing standard does not apply because Plaintiff did not present any "objective medical evidence" that could reasonably produce her pain, the Court need not resolve this dispute here because the ALJ set forth sufficiently specific, clear, and

1   In rendering a credibility determination the ALJ may consider several factors, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*. 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and her reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas*, 278 F.3d at 958).

### 2. Analysis

In this case, the ALJ discredited Plaintiff's subjective complaints because: (1) the objective medical evidence did not support Plaintiff's testimony, (2) Plaintiff's statements to her physicians were inconsistent with her testimony, and (3) Plaintiff's daily activities and treatment programs undermined the alleged severity of her complaints. (Tr. 32). Particularly, the ALJ noted that Plaintiff's physical examinations generally revealed a normal range of motion with full strength in all muscle groups which contradicted Plaintiff's allegations of disabling pain. (*Id.*)[5] The ALJ also observed that

---

convincing reasons for discrediting Plaintiff's testimony.

[5] When determining a claimant's credibility, an ALJ may properly consider the results of physical examinations. 20 C.F.R. §§ 404.1529(c)(1)–(2), 416.929(c)(1)–(2). To the extent Plaintiff contends that the ALJ improperly looked for objective medical evidence for an impairment that does not lend itself to objective findings, the Court disagrees. *See Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (citing 20 C.F.R. § 404.1529(c)(2))). Here, the ALJ did not reject Plaintiff's pain testimony solely based on the lack of objective evidence; rather, the ALJ also considered Plaintiff's daily activities and the inconsistencies between Plaintiff's testimony and statements to her physicians.

Similarly, an ALJ may favor the opinion of a physician over a claimant's testimony. *See Carmickle*, 533 F.3d at 1161. Here, the ALJ gave "great weight" to Dr. Linner, who opined that Plaintiff could sit for eight hours in an eight-hour work day, stand/walk for eight hours, and lift twenty pounds occasionally and ten pounds

Plaintiff walks without a limp, can perform postural tasks, and has full grip strength, despite her allegations of constant pain and numbness in her extremities. (Tr. 32). The ALJ further found that Plaintiff's regular exercise programs contradicted her testimony that she could not sit, stand, or walk for extended periods. (*Id.*) Additionally, the ALJ properly considered Plaintiff's statements that she stopped working at her most recent employment for non-impairment related reasons. (Tr. 30); *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001) (finding that an ALJ properly discredited a claimant's testimony because he "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured").[6] Finally, the ALJ noted the inconsistencies between Plaintiff's testimony that she did not cook or perform household chores and her statements to physicians that she prepares meals and does chores. (*Id.*) These reasons constitute specific, clear and convincing reasons for rejecting Plaintiff's subjective pain testimony.[7]

---

frequently. (Tr. 32–33). These findings are supported by substantial evidence and directly contradict Plaintiff's testimony that she could only walk twenty to thirty yards, stand fifteen minutes, sit for one hour, and lift eight to ten pounds. (Tr. 30–31).

[6] Such evidence may, in fact, be "affirmative evidence" of "malingering." *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (holding that ALJ properly found "affirmative evidence of malingering" because the claimant "reported that he wanted to do volunteer work but refrained for fear of impacting his disability benefits, and claimed disability dating from his last day of employment even though he admitted at the hearing that he left his job because his employer went out of business and probably would have worked longer had his employer continued to operate").

[7] Although an ALJ may not discredit a claimant's testimony solely because the degree of pain alleged by the claimant is not supported by objective medical evidence, *Orteza*, 50 F.3d at 749–50, here, the ALJ provided additional reasons beyond the dearth of objective medical evidence that would support the alleged severity of Plaintiff's pain. For example, the consideration of Plaintiff's daily activities supports the ALJ's credibility determination. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) *as amended* (9th Cir. 1991) (noting that a claimant's ability "to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity" (citation omitted)).

1  Accordingly, the Court finds that substantial evidence supports the ALJ's decision to
2  discredit Plaintiff's subjective pain testimony and therefore will not "second guess" it.
3  *Tommasetti*, 533 F.3d at 1039.

### C. Whether the ALJ Properly Rejected Third Party Testimony

Plaintiff's final contention of error is that the ALJ erred in rejecting the testimony of Bobby Smith, Plaintiff's husband. (Doc. 25 at 31–32). Plaintiff argues that the ALJ did not provide sufficient reasons to discredit his lay testimony. (*Id.*)

In order to reject the testimony of a lay witness, an ALJ must provide "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Here, the ALJ found that Mr. Smith's testimony "echoed those of the claimant" and rejected them "for the same reasons." (Tr. 32). As set forth above, the ALJ properly rejected Plaintiff's subjective complaints. Accordingly, the ALJ appropriately rejected Mr. Smith's testimony by pointing to those same reasons. *See, e.g.*, *Molina*, 674 F.3d at 1115 (observing that an ALJ may properly reject lay witness testimony by referring to the reasons for rejecting a claimant's testimony); *id.* at 1121 (noting that "[e]ven when an agency 'explains its decision with less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004))).

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 12th day of September, 2016.

James A. Teilborg
Senior United States District Judge